return to work."). To the contrary, the Memorandum is job specific.

Our conclusion, that the August Memorandum is not a per se violation of the ADA, is further supported by additional considerations. First, the Memorandum does not expressly accomplish what the Plaintiff claims it does. Although the Memorandum appears to imply a "100 percent healed" requirement, it does not specify, on its face, that it applies to disabled employees, much less disabled employees who seek to work with an accommodation. Rather, the Memorandum refers to persons who return to work after one form of medical, or sick leave, or another. While the Plaintiff was on a medical leave, because of a disabling illness, it is his disability that required an accommodation, not the fact that he was on a medical leave. Simply stated, the ADA does not prohibit the Defendant from having a policy, which would require that persons, who were out on sick or medical leave, but who did not meet the definition of a disabled person under the ADA, be healed before returning to work. See, e.g., Alexander v. The Northland Inn, supra at *3 ("The ADA does not require an employer to permit an employee to perform a job function that the employee's physician has forbidden."). Such a policy would not, in and of itself, offend the ADA. See, Hutchinson v. United Parcel Service, supra at 398.

Nor can it be fairly said that the August Memorandum contemplated something other than an individualized assessment of the capabilities of those persons who were interested in returning to work. Rather, we find that a fair reading of the August Memorandum discloses a benign, and fully legitimate policy, of assuring that those who are injured should be allowed to return to work when they provide medical documentation stating that they were fully released, and able to perform the job duties without restriction.[4] Quite obviously, the Memorandum did not obligate an employee to demonstrate that he or she was physically capable of performing any job, for the focus of the Memorandum was the capacity of the employee to perform the duties of a specific job. More importantly,

---

[4]We do not suggest that the language of the Memorandum could withstand improvement, but our duty is to read words for what they denote, and not for what they may subjectively connote to one who has an interest in the matter. While the Plaintiff reads the Memorandum as stating that persons cannot return to work with restrictions, that reading is faulty. The Memorandum states that an employee cannot return to a job if he or she is unable to perform the job without restriction. In other words, if an essential function of the job requires lifting weights greater than fifty pounds, then the employee should not return to that job unless he or she can lift greater than fifty pounds. To allow otherwise would promote a reinjury -- a prospect that the ADA does not foster.

Similarly, we do not construe the Memorandum as conveying the meaning that Molitor avers as being her intent. According to Molitor, the Memorandum was her effort to rectify a prior error, on her part, in allowing those who are out on a temporary medical leave, that arose from a non-work related injury, to return to a light-duty job. However, objectively read, the August Memorandum does not disclose any such intent.

the Memorandum specified that the employee was required to present medical documentation which, plainly, would be unique to him, or her, in the context of the job to which they sought to return.

In addition, we have no showing that the August Memorandum constituted either a "policy" of the Defendant, or effectuated any program that denied any employee, including the Plaintiff, a job. First, the Defendant has presented evidence of its written company policy concerning the accommodation of disabled individuals, and that evidence is uncontroverted. Jandrt, whose job it was to implement the Defendant's accommodation policies, has averred that, "[a]t all times, * * * [the Defendant's] policies required an individualized assessment of an employee in [the Plaintiff's] situation to determine whether he or she could perform the essential functions of his or her job, with or without an accommodation." Jandrt Affidavit, at 7-8.

In addition, the Defendant's official policy, as enunciated in its "Accommodations Guide," expressly provided that the Defendant "prohibits discrimination against an otherwise qualified disabled applicants or employees who, with or without reasonable accommodation, can perform the essential functions of a particular job," and that the Defendant "will make reasonable accommodations to enable qualified people with disabilities to participate in the job application process, [and] employment * * *." Exhibit 27 to

Johnson Affidavit. The Accommodations Guide provides a definition of disabled, explains what job functions are considered essential, and gives examples of what types of accommodations might be reasonable. Further, it expressly represents that the Defendant "take[s] all accommodations requests into consideration," and would be responsible for assessing the feasibility, and reasonableness, of any accommodation. Id. The Guide also details the means by which an employee might seek various types of accommodations.

Further, the policy expressly allows for the ability of a disabled person to return to work with an accommodation, and for an individual assessment as to the feasibility, and reasonableness, of any accommodation that could be made. We find no evidence, in this Record, that the Plaintiff has competently rebutted the existence, or application, of these accommodation policies. In fact, once the Plaintiff made known to the Defendant, that he was interested in an accommodation, his interest was explored, and was not rejected on the basis of the supposed "100 percent healed" policy.

More importantly, the Plaintiff has failed to demonstrate that the August Memorandum was operative in denying any employee of the Defendant an opportunity to request, and substantiate, the need for a reasonable accommodation, inclusive of the Plaintiff. We are mindful, of course, of the Plaintiff's contention that his interpretation of the Memorandum caused him to defer taking certain

acts, but he has presented nothing to so much as suggest that the Memorandum was effective in displacing the duly promulgated policies of the Defendant, which were applicable to the Defendant's disabled employees who should choose to return to work. Absent from the Plaintiff's proof is any showing, however slight, that any employee of the Defendant was unable to return to work by virtue of the August Memorandum.[5]

Accordingly, we find that the Plaintiff's reliance on a per se violation of the ADA is without merit, and we deny his Motion for Summary Judgment, on that basis, as a matter of law.

---

[5]Notably, notwithstanding the invitation, at the close of the August Memorandum, for any employee having questions, or concerns about the content of the Memorandum, to speak with Molitor, the Record is uncontested that the Plaintiff never spoke to Molitor on that subject. Further, the Plaintiff never submitted the Memorandum to Dr. Langager, but merely presented his interpretation of the Memorandum to Dr. Langager. Exhibit 17 to Johnson Affidavit, at p. 44. Nor did the Plaintiff ask Dr. Langager to contact anyone at the Defendant to suggest any accommodations for the Plaintiff. Indeed, notwithstanding the August Memorandum, the Plaintiff sought a promotion to the CSS position which, the Record discloses, required the same heavy lifting, in cold air -- a work restriction that Dr. Langager had prescribed for the Plaintiff. Lastly, the Record reflects that the Plaintiff was aware of one other employee of the Defendant, who had suffered a heart attack, and who had received a work accommodation that allowed his return to work, and he also knew of an employee who returned to maintenance work with his arm in a sling, and yet the Plaintiff had no recollection of raising those obvious contradictions, to his understanding of the August Memorandum, to Molitor's attention. Id. at pp. 46-50.

b. The Plaintiff's Claims Involving the CSA Position.

As to the CSA position, the Plaintiff argues that, notwithstanding the fact that the Defendant was aware of his interest in returning to work with an accommodation, it failed to engage him in the interactive process that is required by the ADA. The Defendant disagrees, and maintains that the Plaintiff did not make it aware that he was desirous of an accommodation, until he filed his MHRA claim, after which it did engage him in the required interactive process. In response, the Plaintiff asserts that, even if we were to find that he had not made the Defendant aware of his desire to return to work, with an accommodation, his failure to do so was excused by the August Memorandum, which made any such request a futile gesture. Further, he contends that the interactive process, in which the Defendant purportedly engaged after being made aware of his interest in an accommodation, was inadequate. We conclude, however, that the Defendant is entitled to Summary Judgment on the Plaintiff's claims which involve the CSA position.

1) Standard of review. An employee may assert a claim for discrimination, against an employer, for "not making reasonable accommodations to the known physical and mental limitations of an otherwise qualified individual with a disability, * * * unless [the employer] can demonstrate that the accommodation would

impose an undue hardship on the operation of the business of [the employer]." Heaser v. The Toro Co., supra at 830, quoting Title 42 U.S.C. §12212(b)(5)(A)(alterations in original). A predicate to making such a claim, however, is a finding that the employee requested an accommodation from his or her employer. The general rule, that "it is the responsibility of the individual with a disability to inform the employer that an accommodation is needed," Mole v. Buckhorn Rubber Products, Inc., 165 F.3d 1212, 1217 (8th Cir. 1999), exists because an employee "cannot 'expect the employer to read [his or her] mind and know [he or she] secretly wanted a particular accommodation and [then] sue the employer for not providing it." Id., citing Ferry v. Roosevelt Bank, 883 F. Supp. 435, 441 (E.D. Mo. 1995).

As a result, "[t]o show that an employer failed to participate in this interactive process, the employee must first demonstrate that "'1) the employer knew about the employee's disability; 2) the employee requested accommodations or assistance for his or her disability; 3) the employer did not make a good faith effort to assist the employee in seeking accommodations; and 4) the employee could have been reasonably accommodated but for the employer's lack of good faith.'" Ballard v. Rubin, 284 F.3d 957, 960 (8th Cir. 2002), quoting Fjellestad v. Pizza Hut of America, Inc., 188 F.3d 944, 951 (8th Cir. 1999), quoting, in turn, Taylor v. Phoenixville School

District, 174 F.3d 142, 165 (3rd Cir. 1999). "The mere failure of an employer to engage in the interactive process does not give rise to per se liability, although for summary judgment purposes such failure is considered prima facie evidence that the employer may be acting in bad faith." Id.

2) Legal Analysis. There is no dispute, in the Record presented, that the Defendant knew of the Plaintiff's disability, at least as it appeared at the relevant time. Thus, to prevail on this claim, the Plaintiff need only prove the remaining three elements. In actuality, however, the crux of his claim rises, or falls, on the second element -- namely, whether the Plaintiff ever alerted the Defendant to his interest in returning to work with an accommodation and, if he did, when that notification occurred.

As we have noted, the Defendant denies that the Plaintiff ever requested any accommodation for his disability, prior to the time that he filed his MHRA claim. The Plaintiff argues, however, that he made it known to the Defendant, that he wanted to return to his CSA position with an accommodation. Alternatively, the Plaintiff contends that, if he did not so alert the Defendant, then his failure to do so was excused by the August Memorandum, under the "futile gesture" doctrine.

We need not long dwell on the Plaintiff's assertion that, even prior to his filing of his MHRA claim, he had alerted the Defendant to his interest in seeking an accommodation, for we find no evidence, in this Record, to support that contention. In fact, all of the evidence proves to the contrary. At his deposition, when the Plaintiff was asked if his statement was true that, after he "received the memorandum," he "did not inform [the Defendant] of [his] work restrictions," he admitted that it was true, he had not. See, Exhibit 39 attached to Second Affidavit of Matthew E. Johnson, at numbered 119. Notwithstanding that admission, under oath, the Plaintiff maintains that he has raised a material issue of fact, as to his provision of notice concerning the need for an accommodation, in that he had a "discussion about coming back to duty with restrictions with Ms. Molitor," by submitting an application for the CSS position, and by discussing his desire to return to work with co-workers. Plaintiff's Reply Memorandum, at 7. The Plaintiff urges that these "undisputed facts" are sufficient to present a genuine factual issue as to whether he requested an accommodation from the Defendant. We disagree.

As to his first contention -- that he discussed, with Molitor, coming back to work with restrictions -- we have found no evidence, in this Record, which supports such an assertion. In his Reply Memorandum, in which he asserts that he discussed that topic with

Molitor, the Plaintiff cited to "Bev., 29-31" which, we believe, based upon the key provided by the Plaintiff, is a reference to the Plaintiff's deposition. However, having reviewed the entirety of the Record before us, we have no showing that the referenced pages were ever submitted for our review. Instead, we find ample evidence to support a conclusion, as a matter of law, that the Plaintiff did not relay any desire to be accommodated to Molitor.

In her Affidavit, Molitor has sworn that the Plaintiff "had never indicated to [her] in any way, either orally or in writing, that he wanted an accommodation that would allow him to return to work, that [Molitor] was not providing him with an accommodation to which he believed that he was entitled, or that [the Defendant] had failed to abide by its legal duty to accommodate him." Molitor Affidavit, at 5. The Plaintiff has introduced no evidence that he asserted any accommodation request to Molitor in writing, and we have found no evidence of an oral conversation, between Molitor and the Plaintiff, that occurred after the start of his leave, much less one in which he requested an accommodation. Accordingly, we find the Plaintiff's argument, on this score, to be without evidentiary support.

Further, we reject the Plaintiff's contention, that his application for the CSS position -- which, admittedly, he believed he could perform without any accommodation -- was sufficient to inform

the Defendant that the Plaintiff was seeking an accommodation. Nowhere in that application, or in the application process, did the Plaintiff ever suggest that he needed an accommodation to perform the duties of the CSS position. In fact, Molitor has averred that the Plaintiff "never asked [her] for a reasonable accommodation that would have allowed him to perform the essential functions of the CSS position in the event that he was selected for that position." Second Affidavit of Rita M. Molitor, at 5. Had the Plaintiff done so, then a different Record would be presented, but having failed to demonstrate, that a request for accommodation was made by him, we reject his implicit notion that the Defendant should be expected to "mind read" his unexpressed interest in obtaining an accommodation. See, Mole v. Buckhorn Rubber Products, Inc., supra at 1217. Thus, even when we construe the Record in a light most favorable to the Plaintiff, we are unable to conclude that the Plaintiff has competently demonstrated that he placed the Defendant on notice of his desire to return to work as a CSA, with accommodation.

Likewise, we conclude that the Plaintiff's assertion, that his conversations with co-workers would be sufficient to put the Defendant on notice of his interest in being accommodated, is without merit. Even if his conversations could provide the required notice to the Defendant -- an issue we need not now resolve -- there is

simply no evidence to so much as suggest that he ever discussed a desire to be accommodated with any co-worker. The only specific evidence we have, as to any conversation with a co-worker, refers to the Plaintiff's conversation with Fulcher about the Plaintiff's CSS application -- a conversation which was related to Molitor. However, the Plaintiff has not averred that he spoke with Fulcher about a desire to be accommodated, but only that they spoke about his application for the CSS position. Thus, we find nothing, in this Record, to corroborate the Plaintiff's allegation that he spoke with co-employees about a desire to be accommodated.

At the Summary Judgment stage, the Plaintiff is required to do more than merely advance allegations, as he must "set forth specific facts showing that there is a genuine issue for trial." Rule 56(e), Federal Rules of Civil Procedure. As to his allegation, that he had advised the Defendant of wanting to be accommodated, even before the filing of his MHRA charge, the Plaintiff has failed to provide anything more than mere allegation. Accordingly, we conclude that the Defendant was not placed on any notice of the Plaintiff's desire to return to work with accommodation, prior to his filing of an MHRA complaint, and we turn to whether the Plaintiff was excused from that failure, under the futile gesture doctrine. Again, we are obligated, by the Record presented, to hold that he is not.

The futile gesture doctrine arose from the Supreme Court's holding, in International Brotherhood of Teamsters v. United States, 431 U.S. 324, 366 (1977). There, the Supreme Court recognized that "[a] consistently enforced discriminatory policy can surely deter job applications from those who are aware of it and are unwilling to subject themselves to the humiliation of explicit and certain rejection." Id. at 365. Thus, "[i]f an employer should announce his policy of discrimination by a sign reading 'Whites Only' on the hiring-office door, his victims would not be limited to the few who ignored the sign and subjected themselves to personal rebuffs." Id. As a result, "a person [whose] desire for a job is not translated into a formal application solely because of his unwillingness to engage in [such] a futile gesture, * * * is as much of a victim of discrimination as is he who goes through the motions of submitting an application." Id. Under the futile gesture doctrine, "[i]n order for a nonapplicant plaintiff to merit relief, he has 'the not always easy burden of proving that he would have applied for the job had it not been for [the employer's discriminatory] practices.'" Davoll v. Webb, 194 F.3d 1116, 1132-33 (10th Cir. 1999), quoting International Brotherhood of Teamsters v. United States, supra at 368.

In passing the ADA, Congress specifically intended that the "futile gesture doctrine enunciated in Teamsters [should] appl[y]

to employment actions." Id. at 1132, citing H.Rep.No. 101-485(II) at 82-83 (1990), reprinted in U.S.C.C.A.N. 303, 365; S.Rep. No. 101-116 at 43 (1989). As a consequence, in ADA cases, the futile gesture doctrine has been applied in instances where "an employer has a set policy against a particular type of reasonable accommodation, or against such accommodation generally," such that, if an individual "actually knows of an employer's discriminatory policy against reasonable accommodation, he need not ignore the policy and subject himself 'to personal rebuffs' by making a request [for accommodation] that w[ould] surely be denied." Id.

However, it is clear that, under the futile gesture doctrine, at least as applied to the ADA, "an employee's subjective belief about the futility of initiating the interactive process will not, by itself, relieve him or her of th[e] obligation" to invoke such a process. Id., citing Loulseged v. Akzo Nobel Inc., 178 F.3d 731, 739 (5th Cir. 1999). It is "[o]nly in the rare case where an employer has essentially foreclosed the interactive process through its policies or explicit actions [that] the futile gesture doctrine [will] apply." Id. at 1133.

In support of his contention, that his failure to request an accommodation was excused by the futile gesture doctrine, the Plaintiff cites to Davoll, where the plaintiffs were police officers who could not continue in their positions because of their in-

ability to fire their weapons due to their disabilities.[6] The Court of Appeals for the Tenth Circuit concluded, initially, that the employer should be required to consider transferring the plain-

---

[6]The Plaintiff also relies upon Bultemeyer v. Fort Wayne Community Schools, 100 F.3d 1281 (7th Cir. 1996), but we conclude that the decision is inapposite here. In Bultemeyer, a psychologically disabled janitor was told, by his employer, that "he would not receive any special accommodations" when he returned from leave. After visiting the school where he was to be assigned, the plaintiff informed his employer that he could not work at that location, and then neither appeared for the required physical, nor for his first day of work. A few days later, the plaintiff's doctor sent a letter to the plaintiff's employer stating that it would be in the plaintiff's best interest to be assigned to a less stressful position. When he received no response to that letter, the plaintiff filed an ADA claim, asserting a failure to accommodate.

The Court recognized that the plaintiff had not expressly asked his employer for an accommodation, but felt that "properly participating in the interactive process means that an employer cannot expect an employee to read its mind and know that he or she must specifically say 'I want a reasonable accommodation," particularly when the employee has a mental illness." Id. at 1285. Thus, the Court concluded that, having received the letter from the plaintiff's doctor, and given the defendant's knowledge of the plaintiff's mental illness, the employer had a duty to "meet the employee halfway," such that, "if it appears that the employee may need an accommodation but doesn't know how to ask for it, the employer should do what it can to help." Id. at 1285.

Bultemeyer does not advance the Plaintiff's argument, that it would have been futile for him to seek an accommodation from the Defendant. There, the plaintiff had attempted to request an accommodation, even in the face of an explicit statement, by his employer, that he would not receive any special treatment, and the Court concluded that the attempt was sufficient to require something more, in the way of an interactive process, from the defendant. As we have detailed, here the actions of the Plaintiff failed to place the Defendant on notice that he was requesting an accommodation. Therefore, we find Bultemeyer inappropriate as support for the Plaintiff's futile gesture argument.

tiffs to other positions as an accommodation, as there were no accommodations which would have allowed the plaintiffs to remain in their police officer positions. However, any possibility of accommodation, through such a transfer, was foreclosed by the defendant's express policy against transferring disabled police officers to the one position to which they might be transferred. The Court recognized that the combination of the plaintiff's awareness of that policy, together with the defendant's express statement, that it would not help them locate other positions, worked to "effectively indicate[] that the [defendant] had no intention of engaging in the interactive process in good faith." Id. at 1133. As such, the plaintiffs were excused from requesting accommodations by the futile gesture doctrine, since their failure to do so was the "logical result of the [defendant's] position." Id.

Notwithstanding the Plaintiff's argument to the contrary, we find that the same factual circumstances, which confronted the Court in Davoll, are not presented here. As noted, the Plaintiff contends that the August Memorandum effectively informed him, that the Defendant had no intention of engaging in an interactive process in good faith, thereby excusing him from making an accommodation request. While we have already rejected the argument, that the August Memorandum had any such import, even if we assumed that the Plaintiff's understanding of the Memorandum's purport was cor-

rect, that understanding, in and of itself, would not be sufficient to afford the Plaintiff the exemption, from providing notice of an interest in accommodation, that he seeks under the futile gesture doctrine. See, Davoll v. Webb, supra at 1132.

The unscalable obstacle, to the Plaintiff's reliance upon the futile gesture doctrine, is his failure to demonstrate that the Defendant had a "100 percent healed" policy. If such a policy had existed then, perforce, it could have rendered futile any request, by a disabled person, for an accommodation, because the disabled would not be allowed to return to work absent being 100 percent healed. Here, however, no such policy existed, such that the Plaintiff could be excused from requesting an accommodation. Given the underlying rationale of Teamsters, that "[a] **consistently enforced discriminatory policy** can surely deter job applications from those who are aware of it and are unwilling to subject themselves to the humiliation of explicit and certain rejection," the result we reach is compelled by both law, and logic. International Brotherhood of Teamsters v. United States, supra at 366 [emphasis added]. Here, we have no policy, must less a consistently enforced discriminatory policy, that would be expected to deter the Defendant's employees from seeking an accommodation in order to return to work. All we have is the Plaintiff's subjective belief in the

existence of such a policy which, under the governing law, is not enough.

At the Hearing on this Motion, the Plaintiff argued that any such conclusion would be inappropriate, as it would require us to find that he was unreasonable in not approaching his employer for an accommodation, in the face of the August Memorandum, which is a question, he argued, that should be left with the Jury. The argument, however, clearly misses the point. Under the governing law, the Plaintiff must initiate the interactive process by requesting an accommodation from the employer, and this the Plaintiff did not do. His only excuse for that failure is the August Memorandum, as augmented by the futile gesture doctrine. Left unproven, however, is a requisite showing that the alleged policy of discrimination, that the Plaintiff identifies, was consistently enforced or practiced. The deficiency in the Plaintiff's proof is fatal.

As International Brotherhood makes plain, the futile gesture doctrine is predicated the existence of a pattern and practice of discrimination which is "entrenched," "gross and pervasive." International Brotherhood of Teamsters v. United States, supra at 367. No such showing has been made, here. As our Court of Appeals has recently reasoned, in the context of an individualized claim of discrimination, absent a showing that "there was a consistently enforced practice of refusing to [accommodate disabled employees],

such that a [request for accommodation] would face 'certain rejection,'" "no reasonable person could conclude from the present record that 'gross and pervasive discrimination' made it futile [for the Plaintiff] to apply for [an accommodation]." Lockridge v. Board of Trustees of the Univ. of Arkansas, 315 F.3d 1005, 1011 (8th Cir. 2003)[en banc].

The Record demonstrates that the August Memorandum was posted, but the Plaintiff has not shown that, even as he reads the Memorandum, it had continued a practice previously in existence, or had any effect, other than what the Plaintiff self-proclaims, in deterring requests for an accommodation. Rather, the Plaintiff suggests that we find something sinister in the sequence of events provided by the posting, the withdrawal, and the re-posting of the CSS position, as coupled with the publication of the Memorandum. We are unable to make the leap from logic that the Plaintiff encourages. Beyond the absence of any evidence that reveals a consistently practiced effort to deny, foreclose, or deter, accommodation requests, the Plaintiff offers only his subjective belief that something sinister was afoot, as he offers nothing to support his suspicions. Accordingly, we conclude that the futile gesture doctrine does not excuse the Plaintiff's failure to seek an accommodation from the Defendant, as there is no competent showing that the Defendant had a consistently enforced policy of discriminating